UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAMELA MATHIS, et al., individually and on behalf
of all other similarly situated employees,

        Plaintiffs,

v.

QUICKEN LOANS INC.,

        Defendant.
_____/

Case No. 07-10981

HONORABLE STEPHEN J. MURPHY, III

**REPORT AND RECOMMENDATION OF DISCOVERY MASTER RE DISPOSITION OF DISCOVERY MOTIONS**

These two discovery motions were referred by the Court to the Discovery Master for a report and recommendation regarding their disposition. A hearing on the motions was conducted on November 18, 2014. Having considered the points and authorities advanced in the briefing, and the arguments of counsel, the Discovery Master makes the following report and recommendation.

**Background**

This matter, *Mathis v. Quicken Loans* ("Mathis"), is the third of four separate actions under the Fair Labor Standards Act ("FLSA") challenging defendant Quicken Loans' failure to pay allegedly required overtime benefits to plaintiffs Pamela Mathis and several dozen other current and former employees. The first case, *Henry v. Quicken Loans,* No. 04-40346 (E.D. Mich.), proceeded to trial, resulting in a jury verdict for Quicken Loans. After the resolution of appeal in that case, the Court lifted the stay and ordered the cases to proceed in this order: (1) Mathis, (2) Chasteen, and (3) Biggs, with all activity in one case, from discovery to trial, generally to occur and finish before the next case proceeds. The Court further ordered that both expert and non-expert discovery in Mathis be completed by March 31, 2015. Order Setting Scheduling Order, ECF No. 373 (July 29, 2014) ("Scheduling Order").

On August 13, 2014, defendant Quicken Loans served all 178 remaining Mathis plaintiffs (later reduced to 177 by agreement of the parties) with interrogatories and request for production of documents ("RFPD"), which are attached as Exhibits B and C, respectively, to Plaintiffs' Opposed Motion for a Protective Order ("Motion"), ECF No. 376 (Sept. 22, 2014). After unsuccessfully meeting and conferring in an attempt to resolve their differences, on September 27, 2014, plaintiffs filed the instant Motion, seeking: (1) a protective order pursuant to FRCP Rule 26 "preventing Defendant from seeking discovery responses from all 178 [now 177] Plaintiffs and instead limiting written discovery to eighteen representative Plaintiffs along with a simplified, court- approved questionnaire that requires the representative Plaintiffs to provide relevant, non-privileged or otherwise protected information regarding their job duties and hours worked" (Motion at 9).

On October 3, 2014, defendant filed a cross-motion pursuant to FRCP Rule 37 to compel responses to the pending discovery requests "from the 17 named Plaintiffs and the additional 160 Plaintiffs who have opted into [Mathis]." Defendant Quicken Loans Inc.'s Motion to Compel Discovery Responses from Plaintiffs, ECF No. 380 (Oct. 3, 2014) at 1 ("Cross-Motion"). Defendant also seeks payment of the "reasonable expenses incurred in bringing this motion, including attorneys' fees" (Id. at 2).

**Prior Court Orders**

In considering the pending motions, the Discovery Master has the benefit of a number of rulings the Court previously made in these related cases, which provide guidance regarding certain key issues.

1. **Representative Proofs**

In the Henry pre-trial Order On Trial Issues (ECF No. 594 (Sept. 8, 2010)), the Court permitted representative proofs at trial to establish both liability and damages, subject to being revisited "[i]f the Court finds that the evidence actually offered does not establish that the testifying plaintiffs are in fact representative of the plaintiffs as a whole…." (Id. at 6, fn. 2).

15951175.2

Following a four week trial in Henry, the Court issued a "Notice of Proposed Jury Charge and Verdict Form" (ECF No. 704 (March 9, 2011)), in which it reaffirmed plaintiffs ability to rely on representative proofs to establish liability and damages (Id. at 4-5). The Court further found that the question "[w]hether or not the facts adduced at trial show that Plaintiffs who testified are sufficiently representative… is … a factual determination" for the jury (Id. at 6) and fashioned a special instruction, entitled "Collective Action; Representative Testimony," to guide the jury in determining "whether the Plaintiffs who testified are 'fairly representative' of those who did not testify" (Id. at 24-25).

Mathis involves 177 web loan consultants "who worked for Quicken Loans during the relevant period, who initially received notice to join the Henry action, but did not file their opt-in forms until after the time to join Henry had ended." (ECF No. 363, at 2). In its "Preliminary Order on Representative Proof and Bifurcation" (ECF No. 366 (Feb. 19, 2014)), the Court again addressed the issue of representative proofs, "preliminarily conclud[ing] the testimony of FIFTEEN plaintiffs is sufficient to establish representative proof, subject to revisiting and finalization during final pre-trial proceedings (Id. at 5). The Court observed that the "question of representative proofs … is more properly addressed during the final pre-trial proceedings after the close of discovery…" (Id. at 3), explaining that it was issuing a preliminary order, in part, to guide the "scope of discovery" (Id.). From the context, the Court seemed to contemplate discovery directed at "representativeness," stating:

> "Defendants correctly note that representative proofs are appropriate as long as the representative plaintiffs are actually "fairly representative" of the whole. See U.S. Dept. of Labor v. Cole Enterp., Inc., 62 F.3d 775, 781 (6th Cir. 1995). Should facts arise during discovery supporting the use of individual not representative proofs, the Court will revisit the issue at the time"
> (Id. at 5-6).

3

Finally, in finding that the testimony of 15 plaintiffs at trial would be sufficient, the Court was careful to clarify that "[t]his preliminary statement does not 'restrict' the scope of discovery to those fifteen plaintiffs alone." (Id. at 5, fn. 1).

### 2. Conditional Certification

The Court conditionally certified the Henry lawsuit as a "collective action" under Section 216(b) of the FLSA on September 28, 2006. The Court "considered evidence that the web loan consultant plaintiffs shared a single job description, incentive plan, common training, entry as 'junior loan consultants,' and that they were subject to common policies and plans," and concluded conditional certification was appropriate. Henry v. Quicken Loans, Report and Recommendation, ECF No. 278 at 6-8 (Sept. 28, 2006), adopted ECF No. 289.

On February 19, 2014 the Court conditionally certified the Mathis lawsuit as a collective action, finding that the "instant Plaintiffs are materially identical for the purposes of conditional certification to the Henry plaintiffs" and that there was "an identity between the Henry class and the instant Plaintiffs." Order Granting Motion for Conditional Certification as a Collective Action, ECF No. 363 (Feb. 19, 2014), at 5, 6. In so ruling, the Court described the two-step approach to certification it was utilizing, with the first step involving a "fairly lenient" standard for determining whether the members of the proposed collective were "similarly situated," followed by a second step, after discovery was closed, where the Court would "apply a stricter standard" to "answer the question of whether particular members of the class are, in fact, similarly situated." Id. at 3-4. Again, from the context it seems clear the Court contemplated discovery directed at this issue before considering final motions for certification and de-certification. See Id. at 7 (ordering the parties to meet and confer re "the issuance of a scheduling order controlling the time and scope of discovery related to conditional certification (as opposed to general pre-trial discovery), and a deadline for the filing of a motion to de-certify").

4

**3.   Scheduling Order**

On July 29, 2014, the Court issued a Scheduling Order governing, among other things, the scope of discovery in this action, including "both general pre-trial discovery and discovery to and necessary for, motions for class certification/de-certification…." Scheduling Order at 2.  The Court included the following statement:

> "In light of the Court's decision to permit up to fifteen representative plaintiffs to testify, and to control the number and course of depositions during discovery, the Court will order the following:  On or before **November 3, 2014**, the plaintiffs shall designate twenty-eight (28) potential representative plaintiff witnesses for trial and disclose this list to the defendants.  The plaintiffs' final list of fifteen trial witnesses must be drawn from this initial twenty-eight. Defendants may depose any or all of the twenty-eight they so choose" (Id.).

**Analysis**

**1)  Scope of Discovery**

Based on a review of the record in these related cases, and in particular the prior orders described above, the Discovery Master finds that the Court intended to permit defendant to conduct discovery addressing, among other topics, whether the representative plaintiffs testifying at trial are "fairly representative" of, and "similarly situated" to, the non-testifying members of the collective and, further, that by establishing a protocol for designating and deposing "potential representative plaintiff witnesses for trial" in the Scheduling Order the Court did not intend to foreclose such discovery.

To limit discovery, as plaintiffs request, to a subset of potential testifying witnesses to be selected by plaintiffs' counsel would defeat the purpose of allowing defendant to test whether

5

those witnesses, in fact, are "fairly representative" and "similarly situated." Further, the Court did not limit defendant's discovery to depositions of the 28 designated potential representative plaintiff witnesses for trial. To the contrary, in a prior ruling involving the same issue, the Court expressed an intent not to "restrict the scope of discovery to these fifteen [later 28] plaintiffs alone." ECF No. 366 at 5, fn1. In addition, the first sentence of Section II of the Scheduling Order addressing "Discovery" provides: "unless otherwise noted, the Local and Civil Rules pertaining to discovery apply," implying that the Court contemplated other discovery beyond the 28 depositions addressed in Section IIB.

For all of these reasons, the Discovery Master recommends that defendant be permitted to conduct some discovery directed at plaintiffs beyond the 28 designated potential representative plaintiff witnesses for trial.

**2) Number of Plaintiffs Subject to Discovery**

Defendant directed the subject interrogatories and document requests to all 177 opt-in plaintiffs. Plaintiff objects and requests that a protective order be entered limiting the number of respondents to "eighteen representative Plaintiffs" (Motion at 9).

At the outset, the Discovery Master finds that it is necessary and appropriate to allow defendant to pose some interrogatories and document requests to the 28 potential representative plaintiff witnesses for trial designated by plaintiffs on November 3, 2014 to facilitate the depositions the Court has already decided defendant may take, if it wishes. Scheduling Order at 2.

Regarding the remaining 149 opt-in plaintiffs, the Discovery Master believes that the best course is to strike a balance between defendant's legitimate discovery needs and the burden and expense imposed upon plaintiffs and their counsel. Finding the right balance is particularly important in this case given the intent and purpose of the FLSA. *See, e.g., Scott v Bimbo Bakeries USA, Inc.*, 2012 WL 6151734, at *6 (E.D. Pa. Dec. 11, 2012) (holding written discovery from a representative sampling of opt-ins "balances the needs of Defendants and also takes in

6

to account the burden to Plaintiffs and their counsel"); *Gentrup v. Renovo Servs., LLC*, 2010 WL 6766418, at *7 (S.D. Ohio Aug 17, 2010) (stating defendant's discovery rights must be balanced against other important policy considerations, including imposing such burdens on the class as to make collective actions impractical). Discovery of every FLSA opt-in plaintiff "undermine[s] the purpose of conditionally certifying a collective action and would be unreasonably burdensome and wasteful of the parties' and the court's resources." *Cranney v. Carriage Servs., Inc.,* 2008 WL 2457912, at *3 (D. Nev. June 16, 2008); *see also McGrath v. City of Philadelphia,* 1994 WL 45162, at *3 (E.D. Pa. Feb. 10, 1994) (stating individual discovery "obfuscate[s] the issues and drastically enhance[s] the cost of litigation").

Individualized discovery directed at all 177 plaintiffs is also unwarranted in these circumstances because of the "high level of consistency" across the employees that compose the collectives in Henry and Mathis (ECF No. 366 at 4), which distinguishes this case from those cited by defendant permitting extensive individualized discovery where there were indications of much greater variation within the collective. See, e.g., *Wilson v. Navika Capital Grp.*, LLC, 2014 WL 223211, at *3 (S.D. Tex Jan 17, 2014) (noting that employees worked for over 20 corporate defendants, in 11 different locations, in 6 different states, having 10 different job titles, and compensated in 4 different ways); *Stickle v. SCI in Market Ctr., L.P.,* 2010 WL 3218598, at *1 (D.Ariz. Aug. 13, 1010) (allowing individual discovery because plaintiffs claimed that defendants violated the FLSA by implementing seven different payment policies, concluding that "defendant ought to be entitled to know which policy plan each opt-in plaintiff is proceeding under" and it was "important and necessary for the Court to determine how many people are claiming to be members of what subgroup").

Finally, the written discovery requests served by defendant are not "narrowly tailored," as suggested in its brief, and will require an extensive amount of time and effort by plaintiffs to respond properly. This reality distinguishes the instant case from the authorities cited by defendant authorizing individualized discovery that was much less burdensome. *See, e.g.*

7

15951175.2

*Beckworth v. Senior Home Care, Inc.*, 2014 WL 4185124 (N.D. Fla. Aug. 22, 2014) (discovery consisting of only five interrogatories, nine requests for production, and four requests for admission); *Wilson v. Navika Capital Grp.,* LLX, 2014 WL 223211 (S.D. Tex. Jan 17, 2014) (requiring Plaintiffs to merely provide their "Name, Employer, dates of employment, job title, job duties, pay rate, manner of recording time, number of non-overtime and overtime hours for which Plaintiff alleges he or she was not properly compensated"); *Dinkel v. Medstar Health Inc.,* 2014 WL 2885692 (D.D.C. June 26, 2014) (concluding five interrogatories were permissible as they were "narrowly targeted to elicit information relating to the threshold question as to whether class members are similarly situated"); *Stickle v. SCI W. Market Ctr.,* L.P., 2010 WL 3218598 (D. Ariz. Aug 13, 2010) (compelling plaintiffs to answer 11 interrogatories, most of which required "answering in a box" and were "easy to follow" seeking very obvious information"). By contrast, defendant's 14 interrogatories and document requests accompanied by comprehensive definitions and instructions, seek voluminous amounts of marginally relevant information. For example, Interrogatory No. 9 seeks the "identity of every person with whom Plaintiffs…..have communicated regarding any matter alleged in the Complaint, as well as the date and subject matter of every non-privileged interview or communication". Similarly, RFPD No. 26 requests plaintiffs to "produce all documents sent to or received from any current or former employee of Quicken Loans."

 For all of these reasons, the Discovery Master recommends that defendant's written discovery be limited to a sampling of 10% of the collective, or 18 of the remaining opt-in plaintiffs, to be selected by defendant utilizing whatever method it chooses. A ten percent sample size finds support in the case law and, with the addition of the 28 designated potential testifying representative plaintiffs, permits defendant to direct written discovery to 46 plaintiffs, or 25% of the collective. *See, e.g., Scott v. Chipotle Mexican Grill, Inc.,* --- F.R.D. ---, 2014 WL 2600034, at *4 (S.D.N.Y. June 6, 2014) (limiting written discovery to 10 percent of the 580 members of FLSA collective class plus and additional fifteen opt-in plaintiffs); *Bimbo Bakeries USA, Inc.,*

8

15951175.2

2012 WL 6151734, at *6 (limiting written discovery to no more that 10 percent of a collective class consisting of 508 opt-in plaintiffs); *Cranney*, 2008 WL 2457912, at *3 (limiting discovery to 10 percent of workers and worksites in FLSA collective action with 300 opt-ins).

### 3) Use of a Questionnaire

Plaintiffs also seek to substitute a "simplified court-approved questionnaire" for the interrogatories and document requests served by defendant. Motion at 9. Conceptually, there is no problem with the specific questionnaire proposal by plaintiffs (Id., Exh. A); however, absent extraordinary circumstances, defendant should be allowed to be the architect of its own discovery. If defendant is not willing to agree to a questionnaire in lieu of the pending interrogatories and document requests, the Discovery Master is not inclined to force it to do so, especially since it appears plaintiffs previously suggested the use of a questionnaire (Joint Report (ECF No. 369 (Mar. 19, 2014)) at 9), and the Court declined to require one. Accordingly, the Discovery Master recommends plaintiff's request that defendant's discovery be limited to a "simplified, court-approved questionnaire" be denied.

### 4) Specific Discovery Requests

In their formal written responses to defendant's interrogatories and document requests (Cross Motion, Exhs. 3 (ECF Mo. 380-4), 4 (ECF No. 380-5)), plaintiffs interposed a number of objections to specific requests, which defendant seeks to overrule and compel responses. After considering the parties' briefing and entertaining separate argument of counsel, the Discovery Master makes the following recommendation regarding individual discovery requests.

A. Interrogatories

   i) The objections to Interrogatory Nos. 6 and 11 are sustained on the grounds that the discovery sought is neither relevant, nor calculated to lead to the discovery of admissible evidence and, further, that it either can be obtained from some other

9

15951175.2

       source that is more convenient, less burdensome or less expensive (FRCP Rule 26(b)(2)(C)(i)) or the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issue (FRCP Rule 26 (b)(2)(C)(iii)).

ii)    The objections to Interrogatories Nos. 8 and 9 are sustained on the ground they are overbroad and seek discovery that is both relevant and irrelevant and not calculated to lead to the discovery of admissible evidence, with leave for defendant to propose replacement interrogatories that are narrowly tailored to seek only discoverable information.

iii)    The objections to Interrogatory Nos. 3 and 10 are overruled, provided that certain limitations are incorporated and observed:

    a) No. 3 – limited to phones and e-mail addresses "used in performing work for or on behalf of Quicken Loans" during the period plaintiff was employed by defendant.

    b) No. 10 – information re compensation excluded.

i)    Plaintiffs' qualification regarding timing in response to Interrogatory No. 2 is overruled. Each plaintiff must respond to this interrogatory according to the best of his/her knowledge and information at the time of the response and may supplement later if documents produced by defendant refresh his/her recollection and permit a more specific or different answer.

ii)    Plaintiffs have agreed to answer Interrogatory Nos. 1, 4, 5, 7, 12, 13, and 14, subject to certain objections and qualifications stated in their written responses (Cross Motion, Exh. 3) that are not in dispute.

A. Document Requests

    i)     The objections to RFPD Nos. 18, 19, 23, 24, and 27 are sustained on the grounds that the discovery sought is neither relevant nor calculated to lead to the discovery of admissible evidence and, further that it either can be obtained from some other source that is more convenient, less burdensome or less expensive (FRCP Rule 26(b)(2)(C)(i)) or the burden or expense of the proposed discovery outweigh its likely benefit considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action and the importance of the discovery in resolving the issue (FRCP Rule 26 (b)(2)(C)(iii)).

    ii)     The objections to RFPD Nos. 22, 26, 28, 36, 37, and 41 are sustained on the ground they are overbroad and seek discovery that is both relevant and irrelevant and not calculated to lead to the discovery of admissible evidence, with leave for defendant to propound replacement document requests that are narrowly tailored to seek only discoverable information.

    iii)     The objections to RFPD Nos. 8, 9, 10, 11, 12, 13, and 21 are overruled, provided that certain limitations are incorporated and observed.

        a) Nos. 8, 9, 10, and 11 – documents must be produced that list Quicken Loans as an employer or otherwise describe plaintiff's job duties and/or hours worked at Quicken. No redaction will be permitted without the prior approval of the Discovery Master.

        b) Nos. 12 and 13 – documents must be produced pertaining to job training certificates and work-related licenses plaintiffs received during plaintiff's employment with Quicken Loans, or if such document describe plaintiff's job duties and/or hours worked at Quicken Loans.

        c) No. 20 – limited to documents such as pay stubs, W-2 or 1099 forms reflecting the amount and source of income or revenue earned or received by

11

    plaintiff while employed by Quicken Loans as a mortgage broker relating to work performed, services provided, or a business owned or operated by plaintiff.

    d) No. 29 – limited to cell phone and home phone records identified in response to Interrogatory No. 3 as being "used in performing work for or on behalf of Quicken Loans during plaintiff's employment as a mortgage banker."

i) Plaintiffs have agreed to produce documents in response to RFPD Nos. 1, 2, 3, 4, 5, 6, 7, 14, 15, 16, 17, 25, 30, 31, 32, 33, 34, 35, 38, and 39, subject to certain objections and qualifications stated in their written responses (Cross Motion, Exh. 4) that are not in dispute.

**Summary of Recommendations**

As detailed above, the Discovery Master recommends the Court enter the following Orders regarding the pending discovery motions:

1. Plaintiffs' Motion for a protective order is denied as to 18 opt-in plaintiffs to be selected by defendant (in addition to the 28 designated potential representative plaintiff witnesses for trial), and granted as to the remaining 131 members of the collective. Plaintiffs further request that defendant's written discovery be limited to a court-approved questionnaire is denied.

2. Defendant's Cross-Motion to Compel is granted as to the selected 18 opt-in plaintiffs and the 28 designated potential representative plaintiff witnesses for trial, and denied as to the 131 remaining opt-in plaintiffs.

3. Plaintiff shall respond to the individual interrogatories and document requests in accordance with the Discovery Master's specific recommendations above for all 46 responding plaintiffs within 30 days after being apprised of the identity of the 18 opt-in plaintiffs selected by defendant.

4. Each party shall bear its own attorneys' fees and cost incurred in connection with the pending motions.

**Further Proceedings**

Pursuant to FRCP Rule 53(f)(2) and the Order Regarding Discovery Master's Supervision and Management of Discovery Disputes and Other Discovery Related Issues previously entered by the Court (ECF No. 390 (Nov. 24, 2014) ("Procedural Order")), any party may file objections with the Court – or a motion to adopt or modify – the Discovery Master's recommendations within 21 days after service of this Report and Recommendation. Both parties have agreed to abide by the Discovery Master's recommendations unless and until they are modified by the Court. Procedural Order, Sec. I (2)(i).

**APPROVED**.

Dated: December 1, 2014

s/ Gregory P. Lindstrom_____
Gregory P. Lindstrom, Esq.
Discovery Master

GREGORY LINDSTROM, ESQ.
Phillips ADR Enterprises
2101 East Coast Highway, Suite 250
Corona del Mar, CA 92625
Phone: (949) 760-5280

15951175.2